THE PEOPLE, *ex rel.* Uriel M. Rhoades and Sophia Rhoades, *vs.* GEORGE HUMPHREYS, county judge of Cayuga county.

The general doctrine that the right of a father to the custody of his minor children is paramount to that of the mother, is well settled.

He may forfeit that right by misconduct, or lose it by disqualification, and it may be suspended by reason of the tender age of the child and its welfare requiring that it be with the mother. But a strong case must exist, to warrant the depriving him of this right, even for a limited period.

Where the wife has separated from her husband without any sufficient excuse, she ought not to have the custody of her child, unless the health and present condition of the child imperatively require it.

The revised statutes (2 *R. S.* 148, 149, §§ 1, 2) do not confer upon county judges any authority to entertain proceedings by habeas corpus, in behalf of a wife, living in a state of separation from her husband, respecting the custody of a minor child. The supreme court alone—not a justice of that court nor a county judge—is invested with the power given by those sections.

Nor does the 86th section of 2 *R. S.* 575, which declares that the several provisions contained in the title relating to writs of habeas corpus shall be construed to apply, so far as they may be applicable, and except when otherwise provided, to every writ of habeas corpus authorized to be issued by any statute of this state, extend the power specially granted to the supreme court by 2 *R. S.* 148, §§ 1, 2, to the county judge.

Under the provisions of the revised statutes authorizing the removal of proceedings had before any officer into the supreme court by *certiorari*, (2 *R. S.* 563, § 69,) the court has authority to examine and correct any erroneous decision of the officer upon a question of law.

CERTIORARI, to remove proceedings had before the county judge of Cayuga county, upon *habeas corpus*. The *habeas corpus* was sued out by Azubah Rhoades, for the purpose of having the custody of her infant child delivered to her. The child was less than six months old, and had been taken from the mother by its father, Uriel M. Rhoades, and put in charge of his mother, Sophia Rhoades. The county judge ordered and decreed that the child be delivered over to its mother.

*W. T. Worden,* for the relators.

*D. Wright,* for the defendant.

*By the Court,* T. R. STRONG, J. The marriage between Azubah Rhoades and Uriel M. Rhoades took place in January,

1853; and they lived together as husband and wife until the 1st day of April, 1856, when the wife, without the consent of her husband, separated from him, and has since resided with her parents. A female child of the marriage was born on the 12th day of October, 1855, which was, on the separation, taken by the husband to the house of his parents, and placed in the care of his mother. On the 4th day of April, 1856, the wife presented her petition to the county judge of Cayuga county, for a writ of habeas corpus to obtain the custody of the child, and thereupon such a writ was allowed by the county judge, upon which the husband, and his mother, to whom the writ was issued, came before the judge and made return to the writ, to which the wife replied, denying several matters stated in the return. After a hearing before the judge, in which several witnesses were examined on each side, it was adjudged and directed that the wife was entitled to the custody of the child, and that it be delivered to her. This decision it is now sought to have reversed.

The evidence in the case satisfactorily establishes, that the wife had no justifiable cause for leaving her husband. His conduct towards her has been far from uniformly correct; he has been wanting in respectful and kind attentions to her, and has often used harsh, profane and vituperative expressions to her, and to others concerning her, but he has been guilty of no such misconduct as would justify the wife in a separation. The expressions referred to have been made in ebullitions of passion, and have always been mere general angry remarks and charges, not imputing any specific wrong. There is no proof or pretense that he has used or threatened any violence to her person, or failed to provide for his family in a suitable manner, or that it would be unsafe for her to cohabit with him. A complaint by the wife for a separation or limited divorce could not, upon the facts disclosed, stand a moment.

It is apparent from the case that the wife has furnished strong provocation for the misconduct of the husband. Her treatment of him appears to have been very annoying and calculated to test severely his patience. She has often been disrespectful

The People *v.* Humphreys.

and unkind towards him, and in an angry, violent and unbecoming manner, made serious accusations against him; and on one occasion she gave him a blow with her hand. It is not too much to say, that her conduct in the marriage relation has been at least equally blamable with that of her husband. Both have, much to their discomfort and discredit, too readily allowed themselves to engage in family jars, and reproaches of each other, which have been quite frequent, and some of the legitimate fruits are experienced in the separation which has occurred, and in this litigation.

Regarding the wife as having separated from her husband without any sufficient excuse, she ought not to have the custody of the child, unless the health and present condition of the child imperatively require it. Public policy, the sacredness of the marriage relation, and good morals, dictate that the motive to a return to her duty by the wife, arising from the possession of the child by the husband, should not be removed, unless such a necessity exists.

The general doctrine, that the right of a father to the custody of his minor children is paramount to that of the mother, is well settled. He may forfeit it by misconduct, or lose it by disqualification, and it may be suspended by reason of the tender age of the child, and its welfare requiring that it be with the mother. A strong case must exist, to warrant the depriving him of this right, even for a limited period. These views will be found fully supported in *The People* v. *Mercein*, (3 *Hill*, 399, *and the cases there cited.*)

The only difficulty, if any, in the present case, in regard to the right of the father to retain the child, arises from the child being of tender age, and deriving its sustenance, in part, from the breasts of the mother. But upon the evidence, I think these circumstances form no obstacle to the father's right. The mother had not sufficient milk for the child; it was, in part, sustained by feeding; it was placed by the father with a competent person; and down to the hearing on the habeas corpus, some ten days after the separation, had been doing well and growing

fleshy; and besides, the husband was willing at any time, on the wife returning to him, to provide for her, and allow her the care of the child.

I think therefore, on the undisputed facts of the case, that the father had the legal right to the custody of the child, and that the county judge erred as to the law of the case in awarding the custody to the mother.

So far as the proceedings before the county judge, and his decision, are sought to be sustained under sections one and two of the 2 *R. S.* 148, 9, I am of opinion that the sections were inapplicable to that officer, and did not confer on him any authority. By § 1, " When any husband and wife shall live in a state of separation, without being divorced, and shall have any minor child of the marriage, the wife, if she be an inhabitant of this state, may apply to the supreme court for a habeas corpus to have such minor child brought before it. § 2. On the return to such writ, the court, on due consideration, may award the charge and custody of the child, so brought before it, to the mother, for such time, under such regulations and restrictions, and with such provisions and directions as the case may require." The supreme court alone—not a justice of that court, or a county judge—is invested with the authority given by those sections.

The 86th section of 2 *R. S.* 575, in regard to the application of the title relating to writs of habeas corpus, that " the several provisions contained in this title shall be construed to apply, so far as they may be applicable, and except when otherwise provided, to every writ of habeas corpus authorized to be issued by any statute of this state," does not extend the power specially granted to the supreme court by the above recited sections, to the county judge. There is nothing in the said title, in regard to the power to issue the writ, which may be applied to the case provided for by those sections, inasmuch as the sections give the power to the supreme court exclusively.

Under the provisions of the revised statutes, (2 *R. S.* 563, § 69,) authorizing the removal of the proceedings into this court by certiorari, the court has authority to examine and correct

any erroneous decision of the officer, upon a question of law. (*Morewood* v. *Hollister*, 2 *Selden*, 309.).

My conclusion is that the decision of the county judge should be reversed, and the proceedings before him dismissed.

[CAYUGA GENERAL TERM, June 1, 1857. *Johnson, T. R. Strong* and *Smith*, Justices.]